# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GERALD O'CONNELL              :
5 Country Lane                 :
Douglassville, PA 19518,      :
                              :
         Plaintiff,         :
                              :
v.                           :     Civil Action No.:
                              :
THE PRUDENTIAL INSURANCE  :
COMPANY OF AMERICA      :
Prudential Plaza             :
Newark, NJ 07102,         :
                              :
         Defendant.        :

## COMPLAINT

Plaintiff, Gerald O'Connell, hereby brings this civil action against Defendant, The Prudential Insurance Company of America, (hereinafter "Defendant Prudential") and states as follows in support thereof:

## NATURE OF ACTION

1.      This case involves a claim for long term disability benefits under the employee welfare benefit plan ("the Plan") of Rite Aid Corporation, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff seeks recovery of benefits under the Plan's long term disability ("LTD") policy ("the LTD Policy") pursuant to 29 U.S.C. § 1132(a)(1)(B). The LTD policy is insured and administered by Defendant Prudential.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over the issues raised herein pursuant to 29 U.S.C. §

1132(e)(1) and 28 U.S.C. § 1331.

3.  Venue is proper in the Eastern District of Pennsylvania. *See* 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

4.  ERISA provides a mechanism for administrative or internal appeal of benefits denials. *See* 29 U.S.C. §1133. Those mandatory and voluntary avenues of appeal have been exhausted in this case; therefore, this civil action has been properly filed in federal court.

## PARTIES

5.  Plaintiff, Gerald O'Connell, is an adult individual currently residing in Douglassville, Pennsylvania in Berks County, located in the Eastern District of Pennsylvania.

6.  Defendant Prudential is a business entity that conducts business in the Eastern District of Pennsylvania.

7.  At all times relevant, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8.  At all times relevant, Defendant Prudential insured and administered the LTD Policy and was responsible for making claim determinations.

9.  Defendant Prudential administered Mr. O'Connell's LTD policy from its' Philadelphia, PA office with a mailing address of: The Prudential Insurance Company of America, Disability Management Services, PO Box 13480, Philadelphia, PA 19176.

10. As an employee of Rite Aid Corporation, Plaintiff received LTD Policy coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).

## CLAIM FOR BENEFITS

11.    Plaintiff, Gerald O'Connell, is presently 57 years old.

12.    Mr. O'Connell was an active, full-time Pharmacist for Rite Aid Corporation from his date of hire, May 28, 1991, through his last date worked, April 16, 2014.

13.    All of Mr. O'Connell's relevant work training and experience leading up to his last date worked was as a Pharmacist in a retail store setting.

14.    Mr. O'Connell last worked on, April 16, 2014, due to the severity of his physical impairments, including but not limited to: degenerative joint disease of his right knee, status post right knee arthroscopy May 1, 2014, status post right total knee replacement November 11, 2014, advanced degenerative arthritis of his left knee, morbid obesity with a body mass index greater than 45, degenerative disc disease of his lumbar spine with radiculopathy, and peripheral neuropathy.

15.    Subsequent to his last date worked, Mr. O'Connell filed a LTD benefit claim with Defendant Prudential.

16.    For the first twenty-four (24) months benefits are payable, the subject LTD Policy defines "Disability" as follows:

> You are disabled when Prudential determines that:
>
> - you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and
>
> - you are under the *regular care* of a *doctor*; and
>
> - you have a 20% or more loss in your *monthly earnings* due to that sickness or injury.

17.    "Regular occupation" is defined as "… the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as is normally

3

performed instead of how the work tasks are performed for specific employer or at a specific location."

18.   Defendant Prudential approved Mr. O'Connell's LTD claim and paid the first twenty-four (24) months of benefits, from October 13, 2014 through October 12, 2016, in recognition of his inability to perform the material and substantial duties of his "regular occupation" as a Pharmacist.

19.   As of October 13, 2016 the LTD Policy's definition of "Disability" transitions to the following:

> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
>
> - you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience; and
>
> - you are under the regular care of a doctor.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

20.   The term "gainful occupation" is defined as follows

> **Gainful occupation** means an occupation, including self-employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:
>
> - 60% of your **indexed monthly earnings**, if you are working; or
>
> - 60% of your monthly earnings if you are not working.

4

21.   Defendant Prudential issued a June 21, 2016 letter terminating Mr. O'Connell's LTD benefits effective October 13, 2016, almost four months prior to the transition date of the definition of "Disability."

22.   Defendant Prudential provided Mr. O'Connell with a 180-day appeal period running from the date of its' June 21, 2016 termination letter, not running from the October 13, 2016 effective date of termination; thereby, limiting Mr. O'Connell's ability to produce evidence related to the period of "Disability" in dispute beyond October 12, 2016.

23.   Per the June 21, 2016 termination letter, Defendant Prudential's medical review conducted by its' "clinical team… found that you have the capacity to stand and walk occasionally and lift no greater than 20 pounds occasionally. We did not find any medically necessary restrictions and limitations in your records that would prevent you from sitting."

24.   Defendant Prudential's initial medical review was conducted by a physical therapist, Melissa Perez.

25.   Despite Mr. O'Connell's multiple orthopedic surgeries and his comorbid medical impairments, Defendant Prudential did not consult with a licensed physician prior to terminating Mr. O'Connell's LTD benefits.

26.   Per the June 21, 2016 termination letter, Defendant Prudential determined that, "Prior to going out of work, you were performing the duties of a Pharmacist in a retail setting." Defendant Prudential further explained that its' "Vocational Consultant" determined that Mr. O'Connell's wage rate for a "gainful occupation" based on his "indexed monthly earnings" is $40.94 per hour.

27.     Defendant Prudential's June 21, 2016 termination identified three sedentary occupations that allegedly exist and satisfy the wage rate, specifically jobs which "... are seated pharmacy positions that are performed in non-retail, remote work from home environments."

28.     The February 9, 2016 "Vocational Consultant" report of Lindsay Neumann, MS Ed, CRC, on which Defendant Prudential solely relies upon to prove Mr. O'Connell's "reasonably fitted by education, training or experience" to perform sedentary "work from home" pharmacist occupations, does not fill a single typed page.

29.     Ms. Neumann, MS Ed, CRC is identified in Defendant Prudential's claim file as a "Vocational Forensic Specialist."

30.     Ms. Neumann never spoke to Mr. O'Connell.

31.     Ms. Neumann's "forensic" assessment, in full, of Mr. O'Connell's education, training, and experience from 1977 through February of 2016 is as follows:

        1991-2014 Pharmacist 074.161-010, SVP 7, Light

        Clmt was earning $141,940.00/year

        Clmt has a HS diploma (1977)

        Clmt has his BS in Pharmacy (1982)

        Clmt own a computer and can use email/Internet, there is an email address on file. Clmt utilized a computer on the job.

32.     With absolutely no discussion or analysis, Ms. Neumann provided the following assessment of Mr. O'Connell's "Transferable Skills" based on the above summary of his education, work experience, and computer ownership with internet access and an email account:

6

> Transferable Skills: performing a variety of duties, making
> judgments and decisions and attaining precise set standards, limits
> and tolerances

33.     Ms. Neumann identified the following "Transferrable Occupations" that Mr.
O'Connell could perform based on a source referred to as "ERI":

> Remote Clinical Pharmacist 074.161-912 Sedentary $41.69/hr
>
> Remote Pharmacist Consultant 074.161-900 Sedentary $46.61/hr
>
> Online Pharmacist N/A Sedentary $56.0/hr (Salary.com median wage)

34.     Any evidence from "ERI" allegedly relied on by Ms. Neumann was not contained
in either of the two administrative records produced by Defendant Prudential to
legal counsel for Mr. O'Connell.

35.     In further support of the availability of "seated pharmacy positions that are
performed in non-retail, remote work from home environments," Ms. Neumann
writes, "An Indeed.com job search identified multiple job postings for remote
pharmacists."

36.     There is no web search data from Indeed.com, or any other web site, found in either
administrative claim file produced by Defendant Prudential to Mr. O'Connell's
legal counsel prior to filing this action.

37.     Defendant Prudential failed to produce the entire claim file to legal counsel for Mr.
O'Connell where it referenced evidence not provided in response to his written
requests for the claim file pursuant to ERISA.

38.     As a result of Defendant Prudential's failures to produce the entire ERISA claim
file, Mr. O'Connell was prejudiced where he could not review and respond to the

vocational evidence relied on by Defendant Prudential when deciding to terminate
his LTD benefits.

39.    Through legal counsel, Mr. O'Connell submitted a timely appeal on December 12,
       2016 along with additional medical evidence, a vocational expert report, and Mr.
       O'Connell's video testimony.

40.    In the appeal filed by Mr. O'Connell's counsel, he requested from Defendant
       Prudential an 11-day extension of time through January 15, 2017 to submit
       additional evidence.

41.    Prudential denied this request, writing the following in a December 19, 2016 letter,

             Please note that it remains your responsibility to provide all
             information demonstrating that Mr. O'Connell meets all
             requirements under the policy by his employer. As indicated in our
             letter dated June 21, 2016, Mr. O'Connell has been provided 180
             days in order to submit a complete appeal in writing to Prudential,
             including all supporting documentation that he would like
             considered during our review. Therefore, your complete appeal must
             be received by Prudential no later than January 3, 2017. (We do
             allow 14 days for mailing, and move the due date to the next
             business day when the due date falls on a non-business day.)

42.    The medical evidence submitted on appeal to Defendant Prudential establishes that
       Mr. O'Connell is unemployable in any form of full-time employment, including
       sedentary occupations.

8

43.  The consistent medical opinion of long-time treating, board certified orthopedic surgeon, Dr. Prodomos Ververeli, supports Mr. O'Connell's inability to perform full-time sedentary work due to the severity of his comorbid physical impairments.

44.  A two-day functional capacity evaluation from September of 2016 concluded that Mr. O'Connell was limited to, at best, part-time sedentary work for 6 hours and 30 minutes per day from a functional standpoint, but also concludes that "… he is not capable to perform any job category on a repeatable, safe and productive level…" due to his pain, fatigue, obesity, significant deconditioning, diminishing functional levels, and other factors.

45.  An independent medical expert board certified in orthopedic surgery, Dr. Vincent J. Distefano, corroborated the findings of Dr. Ververelli and the two-day functional capacity evaluation opining that Mr. O'Connell had a poor prognosis and was unable to perform any type of full-time sedentary employment "… given the post operative residua in his right knee and significant comorbidities…".

46.  At the time of Dr. Distefano's independent medical examination Mr. O'Connell weighed 415 pounds.

47.  The December 9, 2016 vocational expert report submitted by Mr. O'Connell to Defendant Prudential on appeal determined that he was not a suitable candidate for full-time sedentary work due to his comorbid physical impairments.

48.  The December 9, 2016 vocational expert report, authored following a two-hour face-to-face interview of Mr. O'Connell and a record review, determined that Mr. O'Connell is not "reasonably fitted by education, training or experience" for the jobs identified in Defendant Prudential's February 9, 2016 vocational report because (1) he has only a Bachelor's degree and not a doctoral degree in

9

pharmacology, (2) he lacks any experience working in a hospital setting, pharmaceutical firm, or in any administrative capacity, (3) he lacks transferable skills to a non-retail setting, (4) none of the three job titles identified by Defendant Prudential's February 9, 2016 vocational review are contained in the Dictionary of Occupational Titles ("DOT"), which is the "gold standard" for vocational information, (5) the "ERI" source on which Defendant Prudential's vocational consultant Ms. Neumann relies is a private, for-profit company with "… no way to check either its veracity or its reliability, and as such is not a source commonly relied upon by vocational experts…", (6) every pharmacist job in the DOT is a Light exertion occupation and none are sedentary, (7) Mr. O'Connell is only licensed to prescribe medications in the Commonwealth of Pennsylvania, and (8) the job of an "Online Pharmacist" per Salary.com requires a good deal of standing and walking and; thus, it is not sedentary.

49.     Mr. O'Connell also submitted supportive and persuasive video testimony on appeal to Defendant Prudential.

50.     Defendant Prudential conducted a review of Mr. O'Connell's appeal.

51.     Defendant Prudential ordered a "paper review" of a board certified orthopedic surgeon with a "Sub Specialty Certificate in Surgery of the Hand" by Vincent Battista MD who concluded, in part, that Mr. O'Connell's restrictions and/or limitations "…include no kneeling or crawling. No other restrictions are medically indicated."

52.     Dr. Battista's online bio from his medical practice's web site is attached hereto as Exhibit A.

53.     Dr. Battista's online bio specifies that,

10

> As a fellowship-trained hand and upper extremity surgeon, Dr.
> Battista specializes in hand and wrist trauma, shoulder replacement,
> elbow reconstruction and nerve injuries. He is also board certified
> in the sub specialty of orthopedic sports medicine.

54.    Mr. O'Connell is not alleging "Disability" under the LTD Policy due to hand or
       wrist trauma, shoulder replacement, or elbow reconstruction.

55.    The nature and cause of Mr. O'Connell's disability is due primarily to his knees in
       conjunction with his other comorbid physical impairments.

56.    Defendant Prudential erred in requesting an upper extremity specialist to evaluate
       the severity of Mr. O'Connell's lower extremity, low back, and obesity
       impairments.

57.    When Dr. Battista was asked to comment on Mr. O'Connell's "pain, swelling and
       any other symptoms" that might restrict his work capacity, he opined as follows:

> Pain is the main limiting factor noted in the medical record from
> the above list. This limits his sitting, and standing. He is able to
> walk between 1/2 and the block with the onset of pain. Fatigue
> limits his ability to walk, lift and carry objects. Sitting was limited
> by right knee pain if he keeps his leg in a bent position. These
> restriction would be long term to permanent given his obesity
> which plays a major factor in the above symptoms.

> When evaluated with the functional capacity exam the claimant is
> unable to tolerate more than one half to one block of walking in
> the documented reason for this limitation was fatigue and pain.

11

> When sitting, limiting factor was right knee pain especially when the knee was in a flexed position. There is no objective data as to causation for his pain in a flexed position during sitting. Is walking, carrying and lifting were limited during the FCE by fatigue and pain as well. While the claimant has subjective pain there is no medical documentation to indicate a medical reason for his pain.

58.     Dr. Battista's conclusion that there is no medical reason for a 415-pound man with a recent history of a total right knee replacement, who is also recommended to undergo a total left knee replacement, to experience pain is contrary to the medical evidence of record and defies common logic.

59.     Dr. Battista's opinion is inherently contradictory where he first opines that Mr. O'Connell's only medically necessary restrictions and limitations are "no kneeling or crawling" but then, in response to the very next question, discusses Mr. O'Connell's limitations in sitting and standing due to pain and swelling, concluding that, "These restriction would be long term to permanent given his obesity which plays a major factor in the above symptoms."

60.     Defendant Prudential did nothing to further evaluate Mr. O'Connell's sitting limitations despite the inherent contradictions of Dr. Battista's report.

61.     Dr. Battista's medical opinion minimizes the supportive medical evidence, functional capacity testing evidence, independent medical examination evidence, and treating specialist opinion evidence of record.

12

62.   In response to a February 15, 2017 letter from Dr. Battista, treating orthopedic surgeon Dr. Ververeli explained that Mr. O'Connell is not capable of full-time sedentary employment.

63.   Dr. Battista reviewed Dr. Ververeli's Ferbuary 22, 2017 response and wrote,

> The attached documentation, a reply from Dr. Ververeli to my questions submitted to him, does not change my opinion. There is no alteration in my opinion.

64.   Dr. Battista offered no other rationale or explanation for rejecting Dr. Ververeli's opinion.

65.   Dr. Battista was paid $3,900.00 by Defendant Prudential for his record review and medical opinion.

66.   Per the LTD policy, Defendant Prudential had the authority to order Mr. O'Connell to attend an independent medical examination.

67.   Defendant Prudential did not request that Mr. O'Connell attend an independent medical examination.

68.   Per the LTD policy, Defendant Prudential had the authority to order Mr. O'Connell to attend functional capacity evaluation testing.

69.   Defendant Prudential did not request that Mr. O'Connell attend a functional capacity evaluation.

70.   Upon review of the vocational arguments raised by Mr. O'Connell on appeal, Defendant Prudential's vocational rehabilitation consultant Greg Schwartzkopf referred the case to an external vendor for a labor market survey.

71.   Defendant Prudential hired a third-party vendor, Genex, to conduct a labor market survey for an "Online Pharmacist" specifying that,

> We are seeking to identify pharmacist positions with companies that only receive prescription requests over the internet. We need to determine if:
>
> 1) this occupation exists Mr. O'Connell's labor market (or is recruited nationally as a remote work position)
> 2) this occupation is primarily performed seated with no lifting in excess of 10 pounds
> 3) this occupation would be available on a 32.5 hrs/ week schedule
> 4) this occupation is paying at or above $50.39/hr
>
> Please obtain 4-6 contacts with online pharmacies…

72. Defendant Prudential did not request that the labor market survey evaluate the education, training, or experience required of an "Online Pharmacist," or that of any other sedentary pharmacist occupations, should such occupations exist.

73. Defendant Prudential did not request the labor market survey to identify or evaluate the existence and/or availability of jobs such as a "Remote Clinical Pharmacist" or "Remote Pharmacist Consultant."

74. The March 29, 2017 labor market survey conducted by senior rehabilitation consultant, Catherine L. Phillis-Harvey, MS, CRC, CVE, LPC-PA, QRP-WV, explains that,

> Twenty-eight employers were contacted and this case manager located one employer within Mr. O'Connell's geographical area that would have pharmacist occupations that are sedentary. This employer is Enclara Pharmacia and they have telephonic pharmacists.

14

75.   The labor market survey researcher did not inquire into the qualifications or experience required to be hired for a full-time or part-time sedentary "Online Pharmacist" at the one employer identified.

76.   The labor market survey does not establish that the sedentary "Online Pharmacist" occupation at Enclara Pharmacia are "work-from-home" positions as opposed to "on-site" positions.

77.   The labor market survey was not able to identify a gainful hourly wage that would be paid to a sedentary "telephonic pharmacist" at Enclara Pharmacia because that employer was "… not able to disclose any wage information."

78.   Based on the labor market survey, Defendant Prudential's vocational rehabilitation consultant Mr. Schwartzkopf opined,

>   Based on the survey data we cannot conclude that Online Pharmacist exists in significant numbers in EE's labor market as a part time Sedentary position.

79.   Despite Ms. Neumann's allegation that an "Online Pharmacist" is a suitable "gainful occupation" for Mr. O'Connell per "Salary.com median wage" information, the labor market survey conducted in the real world by Genex determined that the "Online Pharmacist" job does not exist in significant numbers.

80.   The Genex labor market survey also failed to prove or establish that Mr. O'Connell possesses the "education, training or experience" for such a sedentary "work from home" pharmacist occupation, assuming such a job exists, or that, if qualified, Mr. O'Connell could satisfy the wage requirement.

81.   Despite denying Mr. O'Connell's request for an 11-day extension of time to submit additional evidence on appeal, on March 29, 2017, Defendant Prudential requested a 45-day extension of its' 90-day deadline to review Mr. O'Connell's appeal.

82.   Mr. O'Connell, through counsel, granted Defendant Prudential's request.

83.   On April 3, 2017, Defendant Prudential's claim representative, Susan Colinet, drafted an appeal decision overturning Defendant Prudential's June 21, 2016 termination of Mr. O'Connell's LTD benefits effective October 13, 2016 writing the following in conclusion,

> OUTCOME of Appeal Review: Based upon the results of the additional medical and vocational reviews, the claimant remains eligible for benefits as gainful occs could not be identified in his labor market that would be congruent with 6.5 hours of sedentary work per day. SSD has been awarded and ADJ/OP has been performed. At this time it is appropriate to reopen the claim and reinstate benefits per note in claim.

84.   Defendant Prudential rejected the recommendation of its' own employee, Susan Colinet, to reverse the company's termination of Mr. O'Connell's LTD benefits.

85.   On April 5, 2017, Defendant Prudential's claim manager Ms. Colinet wrote that,

> … if ft [full time] capacity is supported- refer back to VRC [Vocational Review Consultant] for EA [employability analysis] revisit and **response to VR [Vocational Review] Report submitted with appeal w/regard to ee's qualifications, etc.**

Emphasis added.

86.   On April 13, 2017, Ms. Colinet's "Senior Claim Review Discussion" with Monica
      Kincaid directed the following:

> Recommend follow up with voc to review if there are occs available
> that would not require more than 6 1/2 hours of continuous work in
> an 8 hour day.

87.   On April 18, 2017 vocational consultant Greg Schwartzkopf noted that his
      assignment was as follows:

> VR [Vocational Rehabilitation] was asked about EE's
> transferability if able to work an 8 hr shift with traditional breaks
> preventing a continuous run of 6.5 hours of work.

88.   Mr. Schwartzkopf's "transferability" analysis, in full, is as follows:

> The three Sedentary remote pharmaceutical occupations identified
> in the 02/09/16 EA [Employability Analysis] all provide for short
> breaks from working at mid morning and mid afternoon, along with
> a lunch break. The Online Retail Pharmacist position was not
> identified in significant numbers in EE's market by LMS [Labor
> Market Survey]. **The other occs, Remote Clinical Pharmacist and
> Remote Pharmacy Consultant, remain congruent with
> experience and capacity.**

Emphasis added.

89.   Contrary to the express terms of the LTD policy and the claim management plan of
      Ms. Colinet, Defendant Prudential's vocational consultant Mr. Schwartzkopf fails
      to assess, in any meaningful way, if Mr. O'Connell possesses the "education,

training or experience" to perform any "gainful occupation" that would meet the LTD policy's wage requirement.

90.    Mr. Schwartzkopf's conclusion is conclusory and based on the erroneous, unsupported, and deficient February 9, 2016 report of Ms. Neumann.

91.    Defendant Prudential's vocational review on appeal, or lack thereof, is evidence of flagrant disregard to the contractual analysis that must happen per the express terms of the LTD Policy.

92.    Despite Genex' labor market survey disproving Mr. Neumann's February 9, 2016 report, at least with respect to the "Online Pharmacist" occupation identified, Defendant Prudential failed to order a subsequent labor market survey to evaluate Ms. Neumann's other sedentary "work from home" pharmacist occupations, i.e. Remote Clinical Pharmacist and Remote Pharmacist Consultant.

93.    Defendant Prudential failed to meet its' contractual burden to establish that sedentary "work-from-home environment" pharmacist positions exist.

94.    Defendant Prudential failed to meet its' contractual burden to show that Mr. O'Connell is "reasonably fitted by education" to qualify for a sedentary "work-from-home environment" pharmacist position, assuming such an occupation actually exists.

95.    Defendant Prudential failed to meet its' contractual burden to show that Mr. O'Connell is "reasonably fitted by... training" for a sedentary "work-from-home environment" pharmacist position, assuming such an occupation actually exists.

96.    Defendant Prudential failed to meet its' contractual burden to. show that Mr. O'Connell is "reasonably fitted by... experience" for a sedentary "work-from-

home environment" pharmacist position, assuming such an occupation actually exists.

97. Defendant Prudential failed to conduct a full and fair review of Mr. O'Connell's LTD claim.

98. Defendant Prudential has an inherent structural conflict of interest acting as both the administrator and insurer of the LTD policy.

99. Mr. O'Connell exhausted the Plan and LTD Policy's mandatory administrative remedies; thus, this matter is now ripe for judicial review.

100. The determination by Defendant Prudential that Mr. O'Connell is not "Disabled" from any "gainful occupation" effective October 13, 2016 per the terms of the LTD policy is contrary to the medical evidence of record and is without rational support.

101. Defendant Prudential has not met its' burden to prove that Mr. O'Connell is "reasonably fitted" to perform a "gainful occupation" that meets the LTD Policy's wage requirement effective October 13, 2016.

102. There is no grant of discretionary authority to Defendant Prudential in the employer's welfare benefit plan or the LTD policy.

103. Defendant Prudential's decision to terminate Mr. O'Connell's long term disability benefits effective October 13, 2016 was arbitrary and capricious.

104. As a direct and proximate result thereof, based on the evidence submitted to Defendant Prudential establishing that Mr. O'Connell medically satisfies the LTD policy's definition of "Disability" continuously beyond October 13, 2016, Plaintiff is entitled to payment of monthly benefits retroactive from October 13, 2016, the first day benefits were not paid, through present.   These benefits should be

continued as long as Plaintiff remains "Disabled" in accordance with the terms of the Plan and LTD policy.

105.    As a direct and proximate result thereof, Plaintiff is entitled to payment of monthly benefits retroactive from October 13, 2016, the first day benefits were not paid, through present where Defendant Prudential failed to prove (1) that sedentary "work from home" pharmacist occupations exist, (2) assuming a sedentary "work from home" pharmacist occupation exists, that Mr. O'Connell is "reasonably fitted by education, training or experience" for such a position, and (3) assuming a sedentary "work from home" pharmacist occupation exists, that such an occupation would satisfy the LTD Policy's wage requirement.   These benefits should be continued as long as Plaintiff remains "Disabled" from any "gainful occupation" in accordance with the terms of the Plan and LTD policy.

*This space intentionally left blank.*

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court enter judgment in Plaintiff's favor and against Defendant; and

B.    That the Court order Defendant to pay disability to Plaintiff in an amount equal to the contractual amount of benefits to which Plaintiff is entitled; and

C.    That the Court order Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment; and

D.      That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g); and,

E.      That Plaintiff recover any and all other relief to which Plaintiff may be entitled, including but not limited to remand to Defendant Prudential for further administrative proceedings, as well as the costs of suit.

Respectfully submitted,

By:     _____
        Joseph Capitan, Esq.      PA Bar No. 307043
        ABELL & CAPITAN LAW
        1650 Market Street, 36th Floor
        Philadelphia, PA 19103
        Phone: (267) 419-7888
        Fax: (267) 270-2998
        joe@longtermdisabilitylawyers.com
        *Attorney for Plaintiff, Gerald O'Connell*

21